**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 2:25-cr-175-MKC |
| ISAIAH SMITH, | |
| Defendant. | |

## DEFENDANT'S SENTENCING MEMORANDUM

SAM WELCH
NANCY MACEOIN
  *Counsel for Isaiah Smith*
FEDERAL COMMUNITY DEFENDER OFFICE
  EASTERN DISTRICT OF PENNSYLVANIA
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106
 (215) 928-1100
Sam_Welch@fd.org
Nancy_MacEoin@fd.org

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................................ 2

    a. Life History (*See* Addendum A) ........................................................................ 2

    b. Psychological Assessment (*See* Addendum A) ................................................. 2

    c. Criminal Conduct ............................................................................................... 2

    d. Remorse .............................................................................................................. 3

    e. Procedural History ............................................................................................. 3

        i. *Philadelphia County* ................................................................................ 3

        ii. *Bucks County* ......................................................................................... 4

        iii. *Eastern District of Pennsylvania* ......................................................... 4

II. THE ADVISORY GUIDELINES ......................................................................... 4

    a. The Cross-Reference at USSG § 2G2.2(c)(1) Does Not Apply. ........................ 5

        i. *The Federal Juvenile Delinquency Act* ................................................. 6

        ii. *The advisory guidelines* ........................................................................ 7

        iii. *The cross-reference does not apply to Isaiah's juvenile conduct* ................. **Error! Bookmark not defined.**

        iv. *The advisory guideline range should be 97 to 121 months' incarceration.* ......... 13

    b. Isaiah's Criminal History Score Should be Lower. ........................................ 14

        i. *Isaiah should receive one point for his juvenile sentence, not two* ....................... 14

        ii. *Isaiah's state-court sentence cannot be counted against him twice.* ..................... 19

III. THE SENTENCING FACTORS .......................................................................... 21

    a. The Nature and Circumstances of the Offense and Isaiah's History and Characteristics ............................................................................................... 21

    b. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense ........................................................ 24

    c. To Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes by the Defendant ............................................................ 25

    d. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner ...................... 26

    e. The Kinds of Sentences Available and the Sentencing Range ...................... 27

    f. Pertinent Policy Statements Issued by the Sentencing Commission ............ 28

    g. The Need to Avoid Unwarranted Disparities and Unwarranted Similarities ............. 29

    h. The Need to Provide Restitution to Any Victim of the Offense .................... 30

IV. RECOMMENDED SENTENCE ........................................................................... 30

V. CONCLUSION ......................................................................................................... 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 2:25-cr-175-MKC |
| ISAIAH SMITH, | |
| Defendant. | |

## DEFENDANT'S SENTENCING MEMORANDUM

Isaiah Smith, by and through his attorneys, Sam Welch and Nancy MacEoin, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, respectfully submits this memorandum in support of mitigation.

This memorandum has four parts. The first section provides relevant background information about Isaiah's life history, psychological assessment, criminal conduct, and state-court proceedings. *Infra,* § I. Because this section contains sensitive information, portions of it have been filed under seal in Addendum A. The second section addresses the United States Sentencing Guidelines. *Infra* § II. The third section addresses the sentencing factors. *See* 18 U.S.C. § 3553(a)(1)–(7); *infra* § III. The final section respectfully asks the Court to sentence Isaiah to between ten and fifteen years' imprisonment, set to run concurrent to Isaiah's ten-to-twenty year sentence in state prison. *Infra* § IV.

## I.    BACKGROUND

a. <u>Life History</u>

*Because of the sensitive nature of the information contained in this section, this section has been filed, under seal, as Addendum A.*

b. <u>Psychological Assessment</u>

*Because of the sensitive nature of the information contained in this section, this section has been filed, under seal, as Addendum A.*

c. <u>Criminal Conduct</u>

On December 28, 2023, when Isaiah was seventeen years old and living at his Uncle Robert's house in Bucks County, he sexually abused a non-verbal three-year-old autistic boy (CV2). PSR at ¶¶ 13(g), 16–18. He recorded one video of this abuse on his cell phone, lasting two minutes and thirty-six seconds. *Id.*

Roughly four months later, on April 12, May 8, and May 15 of 2024, when Isaiah was seventeen years old and living with his godmother's family in Philadelphia County, he sexually abused his godmother's five-year-old daughter (CV1). PSR at ¶ 13. He recorded five video clips of this abuse on his cell phone, lasting a total of one minute and six seconds. *See* PSR at ¶ 13. In each of the videos, the victim appears to be sleeping. PSR at ¶ 13. The victim has no memory of the assault, *see* Exhibit R, and has never reported any abuse to her mother. *See* Exhibit S. The victim's mother believes that the victim would have reported the abuse if she were aware it had occurred. *See id.*

On January 15, 2025, forty days after Isaiah's eighteenth birthday and while he was still living with his godmother's family in Philadelphia County, Isaiah sexually abused CV1. PSR at ¶ 7. Again, CV1 was asleep. PSR at ¶ 7. He was arrested two days later. PSR at ¶ 9. A search of his phones revealed the six aforementioned videos. PSR at ¶ 10.

2

The only images of child pornography that Isaiah possessed are the aforementioned videos. Those images were captured on his cell phone and never distributed to anyone else.

d. <u>Remorse</u>

Isaiah feels profound remorse. After the initial incident with CV2, *see infra* § I.c, Isaiah felt "horrible," Exhibit A to Addendum A at 17. He attempted to slit his own wrists. *Id*. He did not recall that he had kept the video. *Id*. After the incidents with CV1, Isaiah felt "shame." *Id*. He did not watch the videos and forgot that he had them. *Id*.

e. <u>Procedural History</u>

i. *Philadelphia County*

Isaiah was charged in Philadelphia County two days after his arrest. He was accused of committing ten crimes, including involuntary deviate sexual intercourse with a minor, unlawful contact with a minor, photographing a sex act, and possessing child sex abuse material. Exhibit 1; *Commonwealth v. Smith*, No. CP-51-CR1503-2025 (Ct. C.P. Phila. Cnty. Jan. 17, 2025).

Earlier this year, Isaiah pled guilty to the charges in Philadelphia County. He admitted to one count of involuntary deviate sexual intercourse with a child and one count of unlawful contact with a minor. Exhibit 2 at 4:17–11:21. He was sentenced to ten-to-twenty years' imprisonment on both counts, to run concurrently to each other, followed by three years' reporting probation and lifetime registration requirements. *Id.* at 5:8–16, 22:4–10. His state-court sentence takes into account all of the conduct mentioned above: the factual basis of the plea agreement upon which his sentence is premised includes the assault that occurred after Isaiah turned eighteen (on January 15, 2025); the underlying assaults reflected in the five videos that were filmed in Philadelphia County (involving CV1) and the possession of the videos depicting the same; and the underlying assault reflected in the video that was filmed in Bucks County (involving CV2) and the possession of the video depicting the same. *See Id.* at 10:3–11:12. *See*

3

*also* PSR at ¶ 13 (a)–(g) (he is charged with possessing those same six videos in this case). His sentence requires (among other things) that he obtain sex-offender evaluation and treatment, abstain from accessing certain sexually explicit materials and locations, reside at an approved address, and appear at an approved registration site four times each year. *Id*.; *see also* 42 Pa. Stat. and Cons. Stat. Ann. § 9799.15(e)(3).

### ii.    Bucks County

In February of 2026, a petition alleging delinquency was filed against Isaiah in Bucks County juvenile court. Exhibit 3. This petition takes into account the underlying assault of CV2 reflected in the December 28, 2023 video that was filmed in Bucks County, and the possession of that same video. *Id. See also* PSR at ¶ 13(g) (again, Isaiah is charged with possessing that same video in this case). These juvenile proceedings remain pending.

### iii.    Eastern District of Pennsylvania

In April of 2025, Isaiah was indicted in this Court and charged with one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), on or about January 15, 2025. Dkt. No. 1. On January 21, 2026, Isaiah pled guilty to the indictment. Dkt. No. 32. Sentencing is scheduled for June 30, 2026, at 10:00 a.m. Dkt. No. 37.

## II.    THE ADVISORY GUIDELINES

Two aspects of Isaiah's case complicate his guidelines calculation. Both relate to his age. First, Isaiah is charged as an adult for conduct that primarily took place when he was a juvenile. Second, his criminal history consists of a single adjudication of delinquency for possessing marijuana and a string of non-carceral probationary and treatment-related sentences. Each affects the outcome of his guidelines calculation.

The PSR's calculation fails to take the aforementioned into account. It concludes that Isaiah's offense level is 41, PSR ¶ 35, that his criminal history category is III, PSR ¶ 40, that the

4

resulting guideline range is between 360 months and life, and that the range is limited by the 240 month-maximum applicable to Isaiah's offense of conviction. PSR ¶ 74.

The defense respectfully disagrees with this calculation of the advisory guideline range. The PSR's calculation double-counts Isaiah's juvenile conduct, using it to elevate both his base offense level and his criminal history category, resulting in a more than 300% increase in his guideline range. It also assigns him a criminal history point solely because he was a juvenile when his prior sentence was imposed. For the reasons discussed below, the defense submits that the guideline range is 97 to 121 months.

      a.   The Cross-Reference at USSG § 2G2.2(c)(1) Does Not Apply.

In the case before this Court, Isaiah pled guilty to one count of possessing child pornography, in violation of 28 U.S.C. § 2252(a)(4). Dkt. Nos. 1, 32. The defense submits that the proper guideline section for calculating his base offense level is that which pertains to possession offenses: USSG § 2G2.2(a)(1). The PSR, however, uses the guideline section that pertains to manufacturing offenses: USSG § 2G2.1(a). PSR at ¶ 24. The parties arrive at different conclusions because they disagree over the application of the cross-reference located at USSG § 2G2.2(c)(1), the instruction located at USSG § 1B1.3(a)(1)(A), and the Federal Juvenile Delinquency Act, 18 U.S.C. § 5032. This disagreement is consequential: the cross-reference more than doubles Isaiah's advisory guideline range. *Compare* PSR at ¶¶ 24, 74 (concluding that the advisory guideline range is 240 months) *with infra* § II.a.iv (concluding that the advisory guideline range is 97 to 121 months).

The defense's position is taken straight from the guidelines. The guidelines instruct that all of the cross-references located in Chapter Two (including USSG § 2G2.2(c)(1)) "shall be determined on the basis" of acts that were committed "during," or "in preparation for," the "offense of conviction." USSG § 1B1.3(a)(1)(A). By necessity, Isaiah's "offense of conviction"

5

(possession) did not begin until Isaiah turned eighteen: The Federal Juvenile Delinquency Act prohibits the government from "proceed[ing] against" Isaiah for any conduct he committed as a juvenile. *See* 18 U.S.C. § 5032. Consistent with this understanding, Isaiah was charged with, and pled guilty to, possessing images on a date that fell a few weeks after his eighteenth birthday. Dkt. No. 1. In these unique circumstances, the conduct depicted in the videos (all of which took place more than six months before Isaiah turned eighteen) did not occur "during," or "in preparation for," the offense of conviction. Using Isaiah's juvenile conduct to extend Isaiah's guideline range by more than a decade would separately violate the Act, which limits Isaiah's sentencing exposure for all juvenile conduct to five years in a non-adult facility. 18 U.S.C. § 5032(b)(2)(A). For these reasons, and those discussed below, the defense submits that the cross-reference located at USSG § 2G2.2(c)(1) does not apply, and that Isaiah's base offense level should be calculated using the guideline that pertains to possession offenses: USSG § 2G2.2(a)(1).

### i.   The Federal Juvenile Delinquency Act

The Federal Juvenile Delinquency Act applies to "juveniles" who are "alleged" to have committed an "act of juvenile delinquency." 18 U.S.C. § 5032. A "juvenile" is any person who either "has not attained his eighteenth birthday," or, "for the purpose of proceedings and disposition" under the Act, "a person who has not attained his twenty-first birthday." 18 U.S.C. § 5031. A "juvenile delinquency" is "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." *Id*. *See also United States v. Ramirez,* 297 F.3d 185, 190 (2d Cir. 2002) ("The JDA's juvenile proceeding . . . provisions thus apply in cases where a defendant commits a crime before his or her eighteenth birthday and is under twenty-one at the time the juvenile information charging the crime is filed.")

The Act limits the government's ability to prosecute juveniles. Whenever a juvenile is "alleged to have committed an act of juvenile delinquency," that juvenile "shall not be proceeded against in any court of the United States" unless the Attorney General certifies to the Court that at least one of three conditions are met. 18 U.S.C. § 5032. The three conditions are: (1) that the relevant state's juvenile court either does not have jurisdiction over the related conduct or is refusing to assume it; (2) that the State does not have adequate programs and services available for juveniles, or (3) that the conduct in question amounts to a type of crime not implicated in this case (i.e., violent crimes and drug-related crimes). *Id.* In addition, there must be a substantial Federal interest in the case. *Id*. Absent such a certification, the juvenile must either be surrendered to the appropriate state authorities or "proceeded against" in federal court pursuant to the requirements of the Act. *Id.* ("[N]o criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided" in the Act.).

The Act also limits the range of available punishments. Under the Act, the maximum sentence Isaiah could have received for any act of juvenile delinquency is five years of official detention. 18 U.S.C. § 5037(c)(2)(A)(i) (In the "(c) . . . (2) case of a juvenile who is between eighteen and twenty-one years old," a term of official detention may not extend "(A) . . . beyond the lesser of-- (i) five years.") No portion of this sentence could have been served in an adult correctional institution. 18 U.S.C. § 5039.

The guidelines recognize the primacy of the Act. For any "defendant sentenced under the Federal Juvenile Delinquency Act," the guidelines "do not apply." USSG § 1B1.12.

> ii.  *The advisory guidelines*

The PSR correctly identifies the starting point for Isaiah's federal sentencing calculation. PSR at ¶ 24. Because Isaiah pled guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), the pertinent sentencing guideline is USSG § 2G2.2. *Id*. This

guideline includes a cross-reference that requires the court to apply a different guideline section (§ 2G2.1) if the "offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" and if the "resulting offense level" would be "greater" than that applicable under § 2G2.1. USSG § 2G2.2(c)(1).

To determine whether the "offense involved" certain conduct, the guidelines instruct the Court to consider only "relevant conduct." USSG § 1B1.3 ("Unless otherwise specified," the "cross-references in Chapter Two" are to be "determined on the bas[e]s" set forth in the relevant conduct guideline, USSG § 1B1.3). Relevant conduct includes "all acts and omissions committed . . . by the defendant," and "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1)(A).

### iii.   The cross-reference does not apply to Isaiah's juvenile conduct

The underlying conduct depicted in the videos does not qualify as "relevant conduct" under USSG § 1B1.3 because that conduct did not occur during, or in preparation for, the offense of conviction. The government's prosecution in this case is based on a legal fiction. It cannot charge Isaiah with any of the conduct that occurred prior to his eighteenth birthday without first complying with the Federal Juvenile Delinquency Act. 18 U.S.C. § 5032. Each of the videos in question were filmed prior to Isaiah's eighteenth birthday, *see* PSR at ¶¶ 13(a)–(g), and contained on his phone after it. *See* PSR at ¶¶ 7–8. The offense described in the indictment (and the offense to which Isaiah pleaded guilty) alleges only that he possessed child pornography "[o]n or about January 15, 2025" (i.e., the date of his arrest), which fell after his eighteenth birthday. Dkt. No. 1. The theory underlying this prosecution is that Isaiah can be prosecuted as an adult because he possessed a phone that contained child pornography on a date that fell after

his eighteenth birthday—not that he possessed the phone on the dates that he created the videos. *See id.*; 18 U.S.C. § 5031.

In these limited circumstances, the cross-reference in USSG § 2G2.2(c)(1) is not applicable. The acts depicted in the video did not occur "during the commission of the offense of conviction" because the offense of conviction did not begin until (at the earliest) Isaiah's eighteenth birthday, which fell more than six months after the videos were created. If the government's theory was that the "commission of the offense" began prior to Isaiah's eighteenth birthday, it had to prosecute him in juvenile delinquency proceedings. *See* 18 U.S.C. § 5032. It did not. It cannot now argue that the "commission of the offense" began some six months prior to his eighteenth birthday.

Nor did the acts occur "in preparation for" that offense. Isaiah did not cause a minor to engage in sexually explicit conduct in order to "prepare" for the crime of continuing to possess images depicting that conduct when he turned eighteen. USSG § 1B1.3(a)(1)(A). The government has presented no evidence to support any such inference and, absent such evidence, the inference is not warranted. *See United States v. Williams,* 693 F.3d 1067, 1075 (9th Cir. 2012) (declining to apply § 1B1.3(a)(1)(A) because there was no evidence the defendant was "preparing" to commit the offense of conviction); *United States v. McCants*, 554 F.3d 155, 162 (D.C. Cir. 2009) (same); *United States v. Ewing*, 632 F.3d 412, 417 (8th Cir. 2011) (the "fact that [the defendant] opportunistically stole a vehicle during the course of one robbery that he used in a separate robbery two days later does not make the first robbery relevant conduct to the second"). Nor did the acts in question assist Isaiah in avoiding detection or responsibility. USSG § 1B1.3(a)(1)(A). As a result, the cross-reference in USSG § 2G2.2(c)(1) does not apply.

9

The government's arguments to the contrary are unconvincing. *See* Government's Response to Defense Objections; PSR at 22 (noting that the government's response to the defense's objections to the draft presentence report will be attached to the final draft of the presentence report); Exhibit 6. The government says that the defense's position is "non-sensical" and "lengthy and convoluted." Government Response to Defense Objections at 2. But the defense's position is taken straight from the guidelines: All cross-references in Chapter 2 are to be determined on the basis of the defendant's "relevant conduct." USSG § 1B1.3. The government's response worked hard to avoid this provision, offering instead its own interpretation of the word "involved." Government Response to Defense Objections at 2.

Nor are the government's case citations persuasive. The government relies on an unpublished opinion, *United States v. Castro-Valenzuela*, 304 F. App'x 986, 988 (3d Cir. 2008); *see also* U.S. Ct. of Appeals 3rd Cir. App. I, IOP 5.7, and out-of-circuit authority, *see United States v. Zayas*, 758 F.3d 986, 988–89 (8th Cir. 2014); *United States v. Dawn*, 129 F.3d 878, 884 (7th Cir. 1997), in which foreigners argued that their extra-territorial manufacturing could not be considered because it occurred outside the United States, *see Zayas*, 758 F.3d at 988–98; *Dawn*, 129 F.3d at 881–82, or because that conduct was not relevant to particular § 3553 factors. *Castro-Valenzuela*, 304 F. App'x at 991–92. In two of those cases (unlike here) the defendants conceded that their conduct was relevant conduct under the guidelines, *see id*. at 991; *Dawn*, 129 F.3d at 881–82, and in one of those cases, the court expressly reserved a question much closer to the one presented here. *See Dawn*, 129 F.3d at 881 n.5 ("We . . . need not consider whether there might be some circumstances—for example, an extended period of time between the production of the pornography on the one hand and on the other hand the possession ultimately culminating in the arrest—under which it would be inappropriate to consider the production as conduct

relevant to the offense of possession or receipt."). In none of those cases did the court consider whether a juvenile's conduct occurred "during" or in "preparation for" an offense of conviction that did not begin until the juvenile became an adult. *See* USSG § 1B1.3(a)(1)(A).

In addition, it would violate the Federal Judicial Delinquency Act to consider the conduct depicted in the videos because Isaiah was a juvenile when he committed those crimes. As discussed above, the Act places limitations on the prosecution of juveniles who commit an act of juvenile delinquency. 18 U.S.C. § 5032. The Act applies to Isaiah's production-related conduct because he was under the age of eighteen when the production-related conduct occurred, because he is younger than twenty-one years old as of today, 18 U.S.C. § 5031; *Ramirez,* 297 F.3d at 190, and because the conduct would have constituted a federal crime had it been committed when he was an adult. *See* 18 U.S.C. § 2251(a).

As a result, Isaiah may not be "proceeded against" except under the provisions of the Act. 18 U.S.C. § 5032. By relying on conduct that could have been charged under the Act in order to subject Isaiah to a four-fold sentencing increase in an adult criminal proceeding, the government (and this Court) would be "proceeding against" a juvenile for an act of juvenile delinquency without complying with the Act's strictures. This understanding comports with both the common meaning of the phrase "proceed against," *see* Oxford English Dictionary (2025) (to "proceed against" an individual means to "institute and carry on a legal action" or to "take legal proceedings" or to "go to law" against or upon a person) (defining "proceed"),[1] and the meaning of that phrase as it is used in the Act itself. *See* 18 U.S.C. § 5032. When the government "proceed[s] against" a juvenile pursuant to the Act, 18 U.S.C. § 5032, one of the things it does is

---

[1] *Available at*: https://www.oed.com/dictionary/proceed_v?tab=meaning_and_use#28487460, and attached hereto as Exhibit 4.

argue in favor of a particular sentence. *See* 18 U.S.C.A. § 5037(a). The phrase to "proceed[]"

against" thus includes the seeking and obtaining of a sentence. *Id.* By relying on juvenile conduct

to seek and obtain a longer sentence in this Court, the government is impermissibly

"proceed[ing] against" Isaiah. 18 U.S.C. §§ 5032, 5037(a).

Doing so runs counter to not only the text but also the structure and logic of both the Act

and the guidelines. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,

484 U.S. 365, 371, (1988) ("Statutory construction . . . is a holistic endeavor.); A. Scalia & B.

Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Scalia & Garner). Any

construction of the statutory framework described above, *infra* § II.a., which permits the

government to forego proceeding under the Act while simultaneously seeking to punish Isaiah

for conduct covered by the Act—in order to achieve a sentence prohibited by the Act—violates

the structure and logic of both the Act and the guidelines.

Even if it is possible to read the guidelines to permit consideration of Isaiah's juvenile

conduct, the rule of lenity applies. *See United States v. R.L.C.*, 503 U.S. 291, 305 (1992)

(applying the rule of lenity to the Federal Juvenile Delinquency Act). To the degree there is

ambiguity in the meaning of "proceeded against," 18 U.S.C. § 5032, or "during the commission

of the offense," *see* USSG § 1B1.3(a)(1), that ambiguity should be resolved in Isaiah's favor.

To the degree the government addressed the Act in its response to the defense's

objections, the government asserted both that possession is a "continuing offense" running from

the "time [Isaiah] manufactured the videos," Government's Response to Defense Objections at

2—a period of time that began in December of 2023, PSR at 23, when Isaiah was seventeen

years old—and that Isaiah is "not charged with any act that he committed while he was a

juvenile." Government's Response to Defense Objections at 3, n1. These positions are difficult

12

to reconcile. Beyond that, however, the government's response to the defendant's objections did not address the defense's arguments about the Act.

    *iv. The advisory guideline range should be 97 to 121 months' incarceration.*

Because the cross reference at § 2G2.2(c)(1) does not apply, the base offense level is 18 USSG § 2G2.2(a)(1). That base offense level is raised by two points (to 20) because the material involved a minor who had not attained the age of 12, USSG § 2G2.2(b)(2); by four points (to 24) because the material portrays sexual abuse or exploitation of a toddler, USSG § 2G2.2(b)(4); by two points (to 26) because the offense involved the use of a computer, USSG § 2G2.2(b)(6); and five points (to 31) because the offense involved more than 600 images, USSG § 2G2.2(b)(7)(C); *see also* PSR at ¶¶ 13(a)–(g) (the offense conduct involved six unique videos); USSG § 2G2.2 Application Note 6(B)(ii) ("Each video, video-clip, movie, or similar visual depiction shall be considered to have 75 images"); *United States v. Haggerty*, 107 F.4th 175, 177 (3d Cir. 2024).

The guideline applicable to patterns of conduct, *see* USSG § 2G2.2(b)(5), does not apply for the same reasons that the cross-reference at § 2G2.2(c)(1) does not apply. *See* USSG § 1B1.3(a)(ii) (like cross-references, specific offense characteristics are determined on the basis of the guidelines' definition of relevant conduct). In order to determine whether the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," USSG § 2G2.2(b)(5), the Court may only consider conduct that occurred during, or in preparation for, the offense at issue. USSG § 1B1.3(b)(2). The offense at issue did not begin until (at the earliest) Isaiah's eighteenth birthday in December of 2024, and the pattern of conduct depicted in the videos stopped more than six months prior to that date. *See* PSR at ¶¶ 13(a)–(g). Because the conduct depicted in the videos did not occur during (or in preparation for) the offense, it cannot be considered as relevant conduct, and the guideline for patterns of activity, USSG § 2G2.2(b)(5), does not apply.

The offense level is then lowered by two points (to 29) for acceptance of responsibility, *see* PSR at ¶ 33; USSG § 3E1.1(a), and by one additional point (to 28) for acceptance of responsibility and assisting in the investigation or prosecution of the defendant's own misconduct. PSR at ¶ 34; USSG § 3E1.1(b). The correct total offense level is 28. This calculation is depicted in the following chart:

| Guideline | Description | Point Adjustment |
|---|---|---|
| USSG § 2G2.2(a)(1) | Defendant was convicted of § 2252(a)(4) | 18 |
| USSG § 2G2.2(b)(2) | Material involved a minor who had not attained the age of 12 | + 2 |
| USSG § 2G2.2(b)(4) | Material portrays sexual abuse or exploitation of a toddler | + 4 |
| USSG § 2G2.2(b)(6) | Offense involved the use of a computer | + 2 |
| USSG § 2G2.2(b)(7)(C); Application Note 6(B)(ii) ("Each video . . . shall be considered to have 75 images"); PSR at ¶¶ 13(a)–(g) (six unique videos) | Offense involved more than 600 images | +5 |
| USSG § 3E1.1(a); PSR at ¶ 33 | Acceptance of responsibility | - 2 |
| USSG § 3E1.1(b); PSR at ¶ 34 | Assistance in prosecution of defendant's misconduct | - 1 |
| **Resulting Offense Level** | | **28** |

Based upon a total offense level of 28, and assuming a criminal history category of III, *but see infra,* the guideline imprisonment range is 97 to 121 months. USSG §5A.

>   b.   Isaiah's Criminal History Score Should be Lower.

>       i.   *Isaiah should receive one point for his juvenile sentence, not two.*

The PSR assigns two criminal history points for Isaiah's March 2022 adjudication of juvenile delinquency for possession of marijuana-related drug paraphernalia. *See* PSR at ¶ 36;

*Commonwealth v. Smith*, No. CP-09-JV-0000109-2022 (Bucks Cnty. Ct. of C.P. Dec. 6, 2022). It does so pursuant to USSG 4A1.2(d)(2)(A), which adds two criminal history points "for each . . . juvenile sentence to confinement of at least sixty days."

The PSR lists three aspects of Isaiah's sentence from that adjudication of delinquency that lasted sixty days or longer: His sentence "to probation with a condition of home confinement with electronic monitoring" in December of 2022, which lasted sixty-two days; his commitment to Summit Academy in Butler, Pennsylvania, which lasted 179 days; and his aftercare probation, which lasted 158 days. *See also* PSR at ¶ 24 (clarifying that "[t]he basis for assessing criminal history points for the juvenile adjudication at paragraph 36 is the defendant's commitment to Summit Academy and not the term of home confinement or period of aftercare probation.") None constitute "confinement" under USSG 4A1.2(d)(2)(A).

"Confinement" is a term of art that describes sentences imposed as a result of juvenile adjudications. *United States v. Davis*, 929 F.2d 930, 933 (3d Cir. 1991). "The [Sentencing] Commission used the term 'confinement' rather than 'imprisonment' in Section 4A1.2(d)(2) simply because that provision applies to juvenile adjudications, as well as some adult adjudications, and the term 'imprisonment' is not customarily used when referring to juvenile adjudications." *Id.* As a result, "the term 'sentence to confinement' in Section 4A1.2(d)(2) has the same meaning as the term 'sentence of imprisonment'" in the other provisions. *Id.*

This understanding ensures that juvenile sentences do not carry more weight than adult sentences. Defendants receive two criminal history points for any "sentence of imprisonment of at least sixty days." USSG § 4A1.1(b). Defendants also receive two criminal history points for "each adult or juvenile sentence to confinement of at least sixty days." USSG § 4A1.2(d)(2)(A).

15

If "confinement" is interpreted to include sentences that do not amount to "imprisonment," a defendant who committed a juvenile delinquency and was sentenced to (for instance) sixty days of home confinement before turning eighteen could receive more criminal history points than a similarly situated defendant who committed the same crime and received the same sentence after turning eighteen. Such a construction would cause juvenile adjudications to be punished more severely than identical adult convictions.

Consistent with this understanding, the guidelines do not define "confinement." They do, however, define sentences "of imprisonment." Sentences "of imprisonment" mean only "a sentence of incarceration." USSG § 4A1.2(b)(1). "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." USSG § 4A1.2, Application Note 2. A "sentence of probation" is not treated as a sentence of imprisonment "unless a condition of probation requiring imprisonment of at least sixty days was imposed." USSG § 4A1.2, Application Note 2.

Home confinement is not a sentence of imprisonment under the guidelines. *United States v. Marks*, 864 F.3d 575, 581 (7th Cir. 2017) ("This court and most other circuits hold that sentences served in community treatment centers, halfway houses, home detention, or other forms of probation are not imprisonment for guideline purposes"); *United States v. Jones*, 107 F.3d 1147, 1165 (6th Cir. 1997) ("Given the Sentencing Guidelines' uniform treatment of home detention, it is, therefore, apparent that under the Sentencing Guidelines, time spent in home detention does not constitute a 'sentence of imprisonment.'"); *United States v. Phipps*, 68 F.3d 159, 162 (7th Cir. 1995) ("'Home detention' differs from 'imprisonment' throughout the Guidelines' schema. It is not 'imprisonment' but is a 'substitute for imprisonment.'"); *United States v. Thomas*, 135 F.3d 873, 875 n.3 (2d Cir. 1998); *United States v. Gordon*, 346 F.3d 135,

16

138–39 (5th Cir. 2003). "[E]lectronic home detention" is likewise "not a 'sentence of imprisonment' under the guidelines." *United States v. Compton*, 82 F.3d 179, 183 (7th Cir. 1996). *Cf. United States v. Griffith,* No. 23-2713, 2024 WL 5053426 at *4 (3d Cir. Dec. 10, 2024) (unpublished decision), *cert. denied*, 145 S. Ct. 1950 (2025) (*Jones* and *Phipps* inapplicable where defendant was initially sentenced to imprisonment but was immediately paroled to house arrest).

Isaiah's initial sixty-two day period of "probation with a condition of home confinement with electronic monitoring" did not qualify as a "sentence of confinement" under USSG§ 4A1.2(d)(2)(A). This counter-intuitive result—that "home confinement" is not a "sentence of confinement"—is a result of the guideline's implementation of a term of art. *See Davis*, 929 F.2d at 933. If sixty days of home confinement does not result in two additional criminal history points for someone who was an adult during the home confinement, *Marks*, 864 F.3d at 581, it should not add two criminal history points for someone who, like Isaiah, was sixteen years old during the home confinement. *See Davis*, 929 F.2d at 933.

Sentences to "community confinement" or to treatment centers located in the community are also not sentences of imprisonment under the guidelines. *United States v. Adler*, 52 F.3d 20, 21 (2d Cir. 1995) ("'Imprisonment' and 'community confinement' are not synonyms. 'Imprisonment' is the condition of being removed from the community and placed in prison, whereas 'community confinement' is the condition of being controlled and restricted within the community"); *United States v. Latimer*, 991 F.2d 1509, 1514 (9th Cir. 1993) (community treatment center not imprisonment for guideline purposes); *United States v. Pielago*, 135 F.3d 703, 713 (11th Cir. 1998) (same). The guidelines define "community confinement" to include "residence in a community treatment center, halfway house, restitution center, mental health

17

facility, alcohol or drug rehabilitation center, or other community facility" paired with "participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours." USSG § 5F1.1.

Isaiah's commitment to the Summit Academy did not qualify as a "sentence of confinement" under USSG§ 4A1.2(d)(2)(A). The Summit Academy is located on a 125-acre campus in rural Butler County, Pennsylvania. *The Summit Academy School* (last accessed May 26, 2026).[2] The campus includes fields, a fishing pond, and a swimming pool. *Id*. Students are permitted to participate in as many as ten varsity athletic programs (including golf) and seven extracurricular activities (including fishing). *Id.*[3] Students "regularly experience new situations, cultures and lifestyles" via "off-campus activities" and field trips. *Id.* "Nearly every weekend," students travel off-campus to attend "the ballet, professional or collegiate sporting events, museum trips, historical landmarks, the zoo or other unique events." *Id*. The students also receive inpatient drug and alcohol treatment and mental health treatment, receive training in the trades (including carpentry and photography), and participate in "stipend work programs" and "community service." Exhibit 5.

Summit Academy is not imprisonment. Not only was Isaiah free to wander the Academy's large rural campus, he was regularly invited off of that campus to attend sporting events in the community, to work in the community, and to engage in community service. While there, he was also eligible to receive in-patient drug and alcohol care and counseling. Summit Academy's closest analogues are the in-patient community treatment centers that courts have

---

[2] Available at: https://theacademyschools.com/the-summit-academy/

[3] Available at: https://theacademyschools.com/the-summit-academy/off-campus-activities-community-service/

repeatedly found do not qualify as imprisonment. *See, e.g.*, *Latimer*, 991 F.2d at 1514; *Pielago*, 135 F.3d at 713. His time there did not meet the requirement set forth in USSG § 4A1.2(d)(2)(A). *See Davis,* 929 F.2d at 932 ("confinement" and "imprisonment" are interchangeable). *C.f. United States v. Lyons,* 204 F. App'x 136, 137 (3d Cir. 2006) (unpublished opinion) (finding, without analysis, that an order of commitment to the Glen Mills School, "a private residential facility designed to rehabilitate juvenile delinquents," was a "sentence of confinement" under USSG§ 4A1.2(d)(2)(A)); *Davis*, 929 F.2d at 932 (same).

Lastly, Isaiah's sentence of "aftercare probation" was also not a sentence of confinement. As discussed above, the circuit courts of appeal are unanimous that "forms of probation are not imprisonment for guidelines purposes." *Marks,* 864 F.3d at 581; USSG § 4A1.2, Application Note 2. In addition, "[w]ith one exception," every circuit court to consider a related issue, including the Third Circuit, "has held that parole, supervised release, and probation do not qualify as 'imprisonment'" under USSG § 5G1.3, which employs a very similar phrase ("term of imprisonment") to that employed in USSG § 4A1.1(b) ("sentence of imprisonment"). *United States v. Pray,* 373 F.3d 358, 362 (3d Cir. 2004); *see also Prescod, Jr. v. Schuylkill,* 630 F. App'x 144, 148 (3d Cir. 2015). Again, imprisonment and confinement are, for all purposes relevant here, interchangeable. *Davis,* 929 F.2d at 932. Isaiah's sentence to aftercare probation was not a term of confinement.

As a result, Isaiah should receive only one criminal history point for his 2022 juvenile adjudication for possession of marijuana-related paraphernalia. USSG § 4A1.2(d)(2)(B).

### ii. *Isaiah's state-court sentence cannot be counted against him twice.*

Lastly, the PSR also assigns three criminal history points for Isaiah's recent state-court sentence (which involved the same victim at issue here). PSR at ¶ 37; *infra* § I.e.i. It does so pursuant to USSG § 4A1.1(a), which instructs the Court to "[a]dd 3 points for each prior

19

sentence of imprisonment exceeding one year and one month." *See* PSR at ¶ 37. The guidelines define a "prior sentence" to include "any sentence previously imposed for conduct not part of the instant offense." USSG § 4A1.2(a)(1). Application Note 1 explains that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." USSG § 4A1.2(a)(1), Application Note 1.

If Isaiah's production-related conduct is counted as relevant conduct under USSG § 1B1.3, *see* PSR at ¶ 24; *supra* § II.a, that conduct cannot also be used to elevate his criminal history score. "If the conduct leading to the [state] conviction would be relevant conduct under § 1B1.3, then the [state] conviction cannot be counted towards [the defendant's] criminal history score." *United States v. Irvin*, 369 F.3d 284, 292 (3d Cir. 2004). Otherwise, the government would be free "to elect to treat, at its option, certain activity either as relevant conduct, or as a prior offense." *Id*. Such a "'heads I win, tails you lose' gambit simply has no basis in the regime of the Sentencing Guidelines." *Id.*

The PSR's sentencing calculation contains an internal inconsistency. That internal inconsistency causes Isaiah's juvenile conduct to be used against him twice; first, to elevate his base level offense by fourteen points (by counting it as relevant conduct and using it to apply the cross-reference for child pornography production at USSG § 2G2.2(c)(1)), PSR at ¶ 32, and second, to elevate his criminal history score by three points (by counting the sentence he received for that same conduct as a prior offense). PSR at ¶ 37. That is prohibited. *Irvin*, 369 F.3d at 292.

For the reasons described above, *supra* § II.a, Isaiah's juvenile conduct is not "relevant conduct" under the guidelines. But if it is, it cannot be the basis for assigning him a higher criminal history score. *Irvin*, 369 F.3d at 292. Isaiah should receive one criminal history point for

his juvenile sentences, *see supra*, § II.b.i, and no criminal history points for his state-court sentence. His resulting criminal history category is I. USSG § 5A.

The government's arguments to the contrary are not convincing. Isaiah's argument is not premised on the conduct that formed the basis of his state-court convictions, *see* Government's Response to Defense Objections at 4, but on the relevant conduct that the PSR uses to elevate his base offense level. *See supra*, § II.a. Even if Isaiah's argument was based on the conduct underlying his state-court convictions, the government would still be wrong; the factual basis for his plea agreement in state court included *all* of his alleged criminal conduct, including the underlying assaults of CV1 in Philadelphia County (and the possession of the videos of depicting those assaults) and the underlying assault of CV2 in Bucks County (and the possession of the video depicting that assault). Exhibit 2 at 10:3–11:12.

## III.    THE SENTENCING FACTORS

Lastly, the Court must consider the sentencing factors. *See* 18 U.S.C. § 3553(a)(1)–(7). Each weighs in favor of Isaiah's proposed sentence within the range of ten to fifteen years to run concurrent to the sentence he is serving pursuant to his state conviction. *See infra*, § IV.

    a.   The Nature and Circumstances of the Offense and Isaiah's History and Characteristics

The nature of the offense, described above, *see* § I.c, is undoubtedly serious. Over a five-month period during the winter of 2023, Isaiah, then seventeen, filmed six videos, totaling three minutes and forty-five seconds, depicting him sexually assaulting two children. He still possessed copies of those videos when, at age eighteen in January 2025, he was arrested for sexually assaulting one of those children. He has been sentenced to ten-to-twenty years in state prison for much of this conduct and faces additional juvenile charges in Bucks County which covering the rest.

Isaiah's history and characteristics are mitigating. Isaiah was "never given a fair chance to grow up the way a child should." Exhibit B to Addendum A. Much of his young life was punishment in-and-of itself: For thirteen years, he was forced to sleep between his drug-addled, schizophrenic mother and his drug-addled, pedophilic father. When he was not sharing their bed, he slept on the floor or in the garage, with a dog. He was beaten for no reason by his mother's boyfriends and then kicked out of his house, at fourteen, by a mother who all but told him she preferred her drugs and her boyfriends over her children. When he begged to be allowed to return, she refused. All the while, he was subjected to sexual and emotional abuse too horrific to comprehend. Isaiah did not deserve his childhood. No one so young possibly could.

His sisters—perhaps the only people who can claim to understand, in some limited way, both his experience and that of his victims—support Isaiah and ask the Court to grant him mercy. As victims themselves, they know that what Isaiah did "was very serious and wrong." Exhibit G to Addendum A. They "understand the gravity" and "weight" of his actions and cannot "excuse" them. Exhibit B to Addendum A; Exhibit G to Addendum A. But they were also raised in the same "chaos," and "surrounded" by the same "instability," "addiction and trauma," as Isaiah. *Id*. They suffered from the same lack of "protection" and "guidance." *Id.* They know "where he came from" and what he "endured," and that "[t]hat kind of upbringing leaves marks that don't simply disappear." Exhibit B to Addendum A.

Their observation—that Isaiah's childhood is critical to understanding his conduct—is supported by recent research on the human brain. Our behaviors are informed by the sensory information our brains receive in the seconds-to-minutes before we make a decision; by the hormones circulated in our bloodstream in the hours-to-days before that decision is reached; and by our experiences, genetics, and environments in the months-to-years leading up to the

22

decision-making process. *See, e.g.*, Robert Sapolsky, *Behave* (2018); Robert Sapolsky, *Determined* (2023). Adolescents are uniquely susceptible: "If you're an adult, your adolescent experiences of trauma, stimulation, love, failure, rejection, happiness, despair, acne—the whole shebang—will have played an outsize role in constructing the frontal cortex you're working with." Sapolsky, *Determined* at 61; *see also* Exhibit A to Addendum A at 18–19. As Dr. Sapolsky, a chaired professor of neuroendocrinology at Stanford University, puts it: "make sure you pick the right adolescence." Sapolsky, *Determined* at 114.

Isaiah did not pick his adolescence. And while nothing could ever excuse what he did, his adolescence goes a long way toward explaining what happened. Isaiah was raised to believe that sex with children was acceptable. He was repeatedly forced to witness his father—his idol—committing atrocious acts against his own sisters. And when, at the age of eight, he finally gathered the courage to tell someone what was happening, the adults in the room ignored him. No one came to save him. Everyone sent him right back to the bed he shared with his abusive father.

Because of Isaiah's state-court sentence, this Court does not get to pick what remains of Isaiah's adolescence: It will be spent in prison. Nonetheless, for the moment, Isaiah retains the capacity for change. His brain is still developing. Exhibit A to Addendum A at 22–23. His sisters, too, "believe he still has the capacity to grow, to heal, and to become a better person," Exhibit B to Addendum A, and that there is "more to him than the worst thing he has done." Exhibit G to Addendum A. With the right intervention, and the right medical care, he will improve. Exhibit A to Addendum A at 26.

All things considered, Isaiah's progress has been tremendous. He knows that what he did was deeply wrong. He visibly shakes and cries uncontrollably when he tries to describe it.

23

Exhibit A to Addendum A at 18. He feels deep shame—particularly with regard to his failure to spare others the abuse that was visited upon him. *Id*. He does not have pedophilic desires or deviant sexual interests. *Id.* at 26–27. There is every indication that the isolated instances at issue here were the confused experimentations of a juvenile with trauma-inflicted "cognitive distortions about sex," and that Isaiah will be comfortably among the 97% of youth who receive treatment and cease engaging in problematic sexual behaviors. *Id*.

There is still a long way to go. Regardless of what this Court does, Isaiah will spend the entirety of his twenties—and in all likelihood, the majority of his thirties—behind bars. He desperately wants to use that time to become a better person; to gain the vocational and emotional skills that will allow him to "lead a traditional future." Exhibit A to Addendum A at 21. When he gets out, his sisters—the only companions he has ever had—will be there to help him "every step of the way." Exhibit G to Addendum A.

Isaiah's history and characteristics are intimately tied to the nature and circumstances of the offense. Together, they weigh in favor of a mitigated sentence.

        b.   <u>To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense</u>

The creation and possession of child pornography are among the most serious federal offenses. The guidelines take the severity of those crimes into account. Those guidelines were created in part to achieve proportionality through a system that "imposes appropriately different sentences for criminal conduct of differing severity." USSG § 1.3 Introduction and Authority (U.S. Sent'g Comm'n 2023). Isaiah's proposed calculation includes a 18-point base offense level tied to the particularities of the underlying charge (i.e., the possession of child pornography), and include enhancements for the age of the victims, the content of the images, the method of obtaining the images, and the number of images. *See supra* § II.a. The guidelines also take into

24

account the need to promote respect for the law; Isaiah's prior juvenile adjudication has garnered

him at least one criminal history point. *See supra* § II.b. In addition, the Federal Juvenile

Delinquency Act evinces an intent to severely limit the sanctions we impose on people who were

younger than eighteen when the conduct in question occurred. *See* 18 U.S.C. § 5037(c)(2)(A)(i).

Considering all of these factors, and the fact that Isaiah has already been sentenced to ten-to-

twenty years in prison by a state court for much of the conduct at issue here, Isaiah's proposed

guideline calculation is sufficient. A sentence near the top of the range proposed by the defense,

as Isaiah has here requested, would provide just punishment.

c. <u>To Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes by the Defendant</u>

The best available evidence strongly suggests that lengthy sentences have a minimal, and

perhaps negligible or non-existent, effect on general crime rates. For decades, criminologists

have known that the "certainty of punishment is a more effective deterrent than the severity of

punishment." Daniel Nagin, *Deterrence in the Twenty-First Century: A Review of the Evidence*,

Crime and Justice 42 (2013) (hereinafter "Nagin") at 39[4]; Five Things About Deterrence,

National Institute of Justice (2016).[5] The deterrent effect of longer criminal sentences is

especially attenuated when adding years on top of an already long mandatory minimum: the

"deterrent return to increasing an already long sentence is small, possibly zero." Nagin at 39; *see*

*also* Jeremy Travis, et al., The Growth of Incarceration in the United States: Exploring Causes

and Consequences 131 (2014) ("One of our most important conclusions is that the incremental

---

[4] *Available at:* https://kilthub.cmu.edu/articles/journal_contribution/Deterrence_in_the_Twenty-first_Century_A_Review_of_the_Evidence/6471200?file=11900681.

[5] *Available at:* https://nij.ojp.gov/topics/articles/five-things-about-deterrence#one.

deterrent effect of increases in lengthy prison sentences is modest at best.")[6] General deterrence should not weigh heavily in the Court's consideration.

Isaiah's state-court sentence provides sufficient specific deterrence in-and-of-itself. The Sentencing Commission has found there is a "statistically significant preventative relationship between length of incarceration and recidivism" once a sentence exceeds 120 months. Charles Breyer, et al., U.S. Sentencing Comm'n, Length of Incarceration and Recidivism (June 2022) at 20.[7] Individuals sentenced to more than 120 months are roughly 29 percent less likely to recidivate than people who receive shorter sentences, *id.*, and Isaiah is already a member of a group that is exceedingly unlikely to recidivate. Isaiah has already been sentenced a minimum of 120 months in state prison. *Supra* § I.e.i. Nothing greater is needed.

    d.  <u>To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

Isaiah has great potential. He is interested in both therapy and vocational training. However, because he is just nineteen years old, and because his conduct occurred during his adolescence, "traditional adult correctional-based sex offender treatment programs" are "contraindicated." Exhibit A to Addendum A at 26. As a result, his sentence should not be extended to provide him with needed medical care or correctional treatment.

Instead, Isaiah respectfully requests that the Court recommend he serve his sentence at FCI Elkton (located just west of Pittsburgh, Pennsylvania). This prison has a unit devoted exclusively to inmates convicted of sex offenses.[8] Inmates there are largely protected from the

---

[6] *Available at:* https://nap.nationalacademies.org/read/18613/chapter/7#131.

[7] *Available at:* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf.

[8] *See* https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

general federal prison population (and the extra-judicial punishments members of that population often inflict on sex offenders). As a nineteen year old, Isaiah will be particularly vulnerable. Accordingly, he asks that the Court recommend placement in the sex offender treatment program units at any of the three aforementioned federal prisons.

e.  The Kinds of Sentences Available and the Sentencing Range

The kinds of sentences available are outlined in Part D of the PSR. PSR at ¶¶ 73–87. They include imprisonment, supervised release, fines, and restitution (but do not include probation). *Id*. As Dr. Cooney-Koss's report describes, "registering youth as sex offenders is positively correlated with increased severity of depression and suicidal ideation, sexual victimization, harassment, problems in school, lifestyle instability, reduced access to prosocial activities, employment limitations, and difficulty finding housing," and, "at the same time, . . . fail[s] to deter sexual reoffending by children and adolescents required to register who, as a group, already have low rates of sexual recidivism." Exhibit A to Addendum A at 27. Isaiah is already subject to reporting requirements and post-release supervision as a result of his state sentence. *See supra*, § I.e.i. As a result, this Court should sentence Isaiah to the minimum term of supervised release: five years. PSR at ¶ 76; 18 U.S.C. § 3583(k).

The Court should not order any fine. The PSR incorrectly calculates Isaiah's guideline fine range as $50,000 to $250,000. PSR at ¶ 83 (citing USSG § 5E1.2(c)(3)). For the reasons discussed above, the defense submits that Isaiah's total offense level is 28. His resulting fine range is $25,000 to $250,000. USSG § 5E1.2(c)(3). In any event, these totals are too high. Isaiah is just nineteen years old. He has no savings and no work history. A fine would only make post-release employment and self-sufficiency—both herculean tasks—even more difficult.

f.   Pertinent Policy Statements Issued by the Sentencing Commission

Policy statements specific to production offenders show that a downward variance would not be unusual, that Isaiah is unusually young, and that Isaiah is in the minority of production offenders who neither trafficked nor received child pornography. The majority of child pornography production offenders receive a "variance below the applicable guideline range (57.2% of the 512 cases)." Charles Breyer, et. al, U.S. Sentencing Comm'n, Federal Sentencing of Child Pornography Production Offenses (Oct. 2021) at 3.[9] The average age of production offenders is thirty-eight—double Isaiah's age. *Id*. at 24. And more than two-thirds (68.4%) of production offenders "either distributed the pornography they produced, possessed or distributed child pornography that they did not produce, or otherwise participated in an online community devoted to child pornography or sexual exploitation." *Id.* at 40. Not only did Isaiah never distribute any of the images, he did not download or view other images of child pornography.

Policy statements specific to youthful offenders corroborate much of the emerging neuroscience discussed above. *See* William H. Pryor, Jr., et. al, U.S. Sentencing Comm'n, Youthful Offenders in the Federal System (May 2017) at 5. Such research shows that "there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average." *Id*. at 5. "Researchers" now "agree that the prefrontal cortex is not complete by the age of 18," and that "development continues into the 20s." *Id.* at 7. "Most researchers reference 25 as the average age at which full development has taken place, but note there will be significant variation from person to person." *Id*. As a nineteen year old, Isaiah's brain is less developed than 93% of even the most youthful federal criminal defendants, *id*. at 15, a group that

---

[9] *Available at*: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf

28

itself consists of the 12% of criminal defendants with the least-developed brains. *Id*. at 13. As a seventeen year old—the age at which the videos in question were filmed—Isaiah's brain was less developed than 99.9% of defendants in the federal criminal system. *See id*.

      g.   The Need to Avoid Unwarranted Disparities and Unwarranted Similarities

The Court should also consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). An unwarranted disparity is "defined as different treatment of individual offenders who are similar in relevant ways, or similar treatment of individual offenders who differ in characteristics that are relevant to the purposes of sentencing." Ricardo Hinojosa, et al., U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (November 2004).[10]

Most people convicted of child pornography production offenses receive sentences below the recommended guideline range. For example, in 2019, only 30.7% of individuals sentenced under Section 2G2.1 were sentenced within the proscribed guideline range. Charles Breyer, et. al, U.S. Sentencing Comm'n, Federal Sentencing of Child Pornography Production Offenses (Oct. 2021) at 22.[11] By contrast, 57.2% of individuals sentenced under Section 2G2.1 received downward variances. *Id.* Declining to grant Isaiah a variance would result in an unwarranted sentencing disparity.

---

[10] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/15-year-study/15_year_study_full.pdf.

[11] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf

h.   The Need to Provide Restitution to Any Victim of the Offense

The PSR recommends restitution but does not specify an amount. PSR ¶ 86. Isaiah respectfully requests that any order of restitution take into account his age, lack of work experience, and background.

## IV.   RECOMMENDED SENTENCE

In light of the foregoing, Isaiah respectfully requests that the Court sentence him to no less than ten years, and no more than fifteen years, in federal prison, and that the Court set this sentence to be run concurrent to Isaiah's state sentence of ten-to-twenty years. Because Isaiah's underlying production-related conduct is not relevant conduct under the guidelines, *see infra* § II.a., his guideline range is 97 to 121 months. *See* USSG § 5A. A term of ten years (120 months) would fall on the upper end of the guideline range, *see infra* § II.a, and, although no greater sentence is necessary, the Court may feel that certain facts or circumstances about Isaiah's crime require a slightly elevated sentence. Whatever number the Court decides upon, it should set Isaiah's sentence to run concurrently to Isaiah's existing ten-to-twenty year state sentence because doing so would achieve reasonable punishment for the instant offense, USSG 5G1.3(d), in light of Isaiah's extraordinarily difficult childhood, the fact that he has already been sentenced in state court for this conduct and faces a third prosecution in Bucks County, and because of Isaiah's youth.

In the event that the Court arrives at a higher guideline calculation (whether because it determines that Isaiah's prior conduct counts as relevant conduct, or for any other reason), Isaiah's significant history of abuse (as well as the unique role his juvenile conduct plays in his guideline calculation) justifies a downward variance. *See Negroni,* 638 F.3d at 443.

If the Court determines that Isaiah's production-related conduct is relevant conduct under the guidelines, it must order that any sentence it imposes be run concurrently to Isaiah's existing

30

state-court sentence. USSG 5G1.3(b)(2). ("If . . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be . . . . imposed to run concurrently to the remainder of the undischarged term of imprisonment."). Given that the statutory maximum for this offense is twenty years, PSR at ¶ 74, in the event that the Court determines Isaiah's production-related conduct is relevant conduct, this Court cannot extend Isaiah's total term of imprisonment beyond the upper end of Isaiah's existing state court sentence.

Finally, for the reasons discussed above, the Court should impose five years of supervised release, no fine, and an amount of restitution that takes into account Isaiah's age, lack of work experience, and background. Isaiah also respectfully requests that the Court recommend to the BOP that Isaiah be placed in the sex-offender unit at FCI Elkton.

## V.    CONCLUSION

For the foregoing reasons, and any which become apparent at the sentencing hearing on June 30, 2026, the defense respectfully requests that this Court sentence Isaiah to between ten and fifteen years' imprisonment, to be run concurrent to Isaiah's state-court sentence of ten-to-twenty years.

Respectfully submitted,

/s/ Sam Welch
SAM WELCH
Assistant Federal Defender
NANCY MacEOIN
Assistant Federal Defender

31

## CERTIFICATE OF SERVICE

We, Sam Welch and Nancy MacEoin, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we have served a true and correct copy of the foregoing Defendant's Sentencing Memorandum via the Court's Electronic Filing (ECF) system, which sent notification to Michelle T. Rotella, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106, via her email address Michelle.Rotella@usdoj.gov.

/s/ Sam Welch
SAM WELCH
Assistant Federal Defender

DATE:  June 23, 2026